The next case today is QBE Seguros v. Carlos A. Morales-Vazquez, appeal number 191503. Attorney Castanet, you can begin with your argument and attorney Sosa, you can mute your audio and video at this time. Good morning, my name is Alberto Castanet and I represent the appellant Carlos Morales-Vazquez. May it please the court, can I reserve two minutes for rebuttal please? Yes. Okay, thank you your honor. The appellant submits that the judgment by the district court should be vacated either because the marine insurance doctrines relied upon should be replaced by the new doctrines adopted in England or in the alternative because under the current doctrines in place in the United States, rely and inducement are required by both the law and the contract entered by the parties and because QBE waived the strike to void the policy because it failed to take action promptly after becoming aware of the grounds to void it. This case highlights the inequities and injustice of two centuries-old doctrines of marine insurance and provides a court with a unique opportunity to adopt the most current, sound and fair policies that would level the playing field in the marine insurance market. Will it take federal courts another 200 years to catch up with England? Remember, Congress has never legislated on this matter and will never do so as recognized by the Supreme Court in the Wolburn boat case in which the Supreme Court held that federal entrenched principles of maritime law are developed by the court sitting in Admiralty and the rest is laid to the states to regulate, not Congress. Despite that counsel, you don't want us to follow some English decision that is declared by an Parliament and there's nothing in any of the Supreme Court cases that you cite or any other case that I know of that says that a United States court should modify the common law of Admiralty in this country by following statutes that Parliament enacts from time to time. Well, Your Honor, the marine insurance law of England was based on case law primarily but then it was codified in 1906 through the Marine Insurance Act and the Marine Insurance Act has served as guidance for Admiralty courts since it was enacted so it's nothing new that Admiralty courts will look at... But the Marine Insurance Act codified the law as it existed at the time. Congress in the most recent enactment, not Congress, Parliament in the most recent enactments has made substantial modification to the judicial doctrines. Oh yes, Your Honor, but let's remember that England is the epicenter of marine insurance in the world. Every single day hundreds if not thousands of policies affecting U.S. interests and this are underwritten in England and the Supreme Court has called courts in Admiralty to observe uniformity between the two systems. No, excuse me, the Supreme Court has mentioned that in dictum. It has never made a holding to that effect and in the two most prominent cases that you cite, the Supreme Court after saying that in effect did not follow English law. Isn't that correct? Yes, Your Honor, but the fact is that the disparity now created by this legislation is so great that our system should be aligned with their system. If it was good enough to adopt it, why not good enough to reform it? Because it would really take us another 200 years to catch up. Remember, the policies behind the Ubermai Fidei and breach of warranty are no longer existent today. Back in the day, underwriters in London had to blindly trust an insurer who was selling ships across the globe because he had no means to verify the commerce. In this day and age, that's no longer the case. Look at us now. You're in Boston, I'm in Puerto Rico, and we're exchanging information in real time. The insurers are as capable as us today to access this information. So those policies no longer exist. Counsel, excuse me. I'll pass the fact that I'm not in Boston. But beyond that, I have a procedural question. This argument about following the English enactments, I think I've looked fairly carefully in the record below, and I can't find any indication that you ever raised this argument in the district court. Your Honor, it was... Am I incorrect? Yes, Your Honor. It was squarely raised in a motion to dismiss and then a motion for judgment of the pleadings at the very early stages of the litigation. However, that was not a judgment that would affect the rights of the parties that would allow for an interlocutory appeal in advocacy. No, I know that. But in the was the briefing at the time the district court entered judgment in this case. Oh, Your Honor, on the pretrial report, it was certainly included. Okay. All right. I'll check that. No worries. Counsel, can I ask you a question about how you deal with the Catlin versus San Juan case, which is a 2015 case from the First Circuit, where the court says that we... It says, although this court has not yet held definitively that Ubermaid-Fidelity, pardon my pronunciation, is an established rule of maritime law, we do so now. Thus joining the unanimous consensus of our sister circuits. You seem to be asking us to overturn that decision as a three-judge panel. Well, not really, Your Honor. The issues now before the court were not presented to the court at that time. This is really a case of first impression at a national level. In that case, the First Circuit, for the first time since the creation of the United States Judiciary, held that it was an intense principle of maritime law. However, there are two things we need to point out about Catlin. First, the reform in England was not brought to the court's attention, either in the lower court or the Court of Appeals. And number two, the case was absolutely silent about the requirement of reliance that many other circuits have adopted. And it was certainly discussed and relied upon by the district court, Judge de Sousa did. I'm sorry, did someone say something? Well, go finish that thought. No, that's my question. No, no, that's basically it, Your Honor. Even if you had a point on the position with respect to utmost good faith, there's still the warranty of truthfulness issue, which they could rely on. And there, if I'm understanding it, what is the argument that we'd be relying on from England? That would be a public policy argument is the only basis you have for winning on that? No. Well, as to the English reform, the basis of the contract clauses, which it's called here, warranty of truthfulness, were completely declared null and void, and the parties cannot contract out of it. That's a public policy argument, right? Yes, Your Honor. And under the current... Does the idea of a public policy objection transfer over as a common law? I mean, it's one thing to say, what's the content of a common law rule like utmost good faith? And you say, well, that should be informed by new developments, including this new development, which is the development of a change in English law, albeit a statutory one, okay? But even if you won on that argument, you'd still lose here unless you can overcome the warranty of truthfulness point. And as to that, you're saying, well, that one you went on because it's against public policy. No, Your Honor, what we're saying is that if we come to that scenario that you just mentioned, the QBE waived its right to void the policy for breach of warranty under the current law in the First Circuit. And there are several facts which are... Those are the defenses? If the court were to decide that the reform of England will not be observed, and we're still dealing with American general maritime law, then our argument... I'm asking a prior question. What is your argument about the effect of English law on the warranty of truthfulness contention, which is a separate ground on which you could lose? Well, Your Honor, under the Consumer Insurance Act of 2012, which would apply to this case, because this is a consumer insurance, the appellant is an individual that owned a pleasure boat. The basis of the contract clause, which means a clause that says everything you're saying here is the basis of my contract. So we're relying on this. It's no longer grounds to void a policy. And I understand that what I'm saying is that argument. Isn't that just an argument that a force? Well, no, Your Honor. Our argument is that it has been enacted and reformed in England, and we should follow the lead. It was, in fact, a matter of public policy because the Law Commission after 60 years of investigation found that it was extremely harsh and unfair for insurers to have their policies voided under this particular type of clause. So we hope that public policy found by the Law Commission after extensive research of decades of every player in the insurance market will trickle down to these waters because it is safe and it is sound policy, Your Honor. But the policy form in this case, as with virtually any policy form, was approved, was it not, by the insurance commissioner in Puerto Rico? Not really, Your Honor. Marine insurance is of the chapters of the Puerto Rico insurance code, as this court has recognized in many cases, including Pagan Sanchez and I think also on San Juan Towing. So it was included. And it's very interesting that QBE cites this clause for the proposition that to say that they contracted into the warranty of truthfulness, but it denies its application for reliance as a contractual term of the agreement. When, in your view, does the English policy make clear that the warranty of truthfulness is void? Well, you have all the reports of the Law Commission and you have the Consumer Insurance Act of 2012 and the United Kingdom Insurance Act of 2015, which deals with commercial insurance. So what year are you saying that this became void, this term? Well, when the Consumer Insurance Act became effective, I believe it was in 2012 or early 2013. Okay. So prior to the formation of this contract? Oh, yes, Your Honor. This policy was issued in 2014. That's time. Thank you. Okay. Thank you. At this time, Attorney Castanier, you can mute your audio and video and we will hear from Attorney Sosa. If you can unmute your audio and video. Good morning. May it please the Court, my name is Manuel Sosa and I represent Napoli QB Seguros in this case. As part of my argument, I will be addressing the following points. Number one, this is more than a comedy case. It is actually a separation of powers case. Number two, stare decisis counsels for the continued validation of the doctrine of utmost good faith or appellant Mr. Morales breach the warranty of truthfulness containing the policy. And finally, number four, the appeal judgment is based on determinations of fact that were premised on credibility assessments made by the district court, which are subject to clear error standard review. Now, this is not an overly complicated case, but it is an important one. And allow me to correct some points that Mr. Castanier made in his argument. The policy here was indeed approved by the insurance commissioner in Puerto Rico. Marine insurers in Puerto Rico have to comply with regulations regarding insurance in Puerto Rico. Marine insurance policies are excluded from the code for purposes of interpretation, but marine insurers have to comply with regulatory requirements from the Commonwealth of Puerto Rico. Now, going to the first point of my argument, as it has been recognized by the Supreme Court in decisions such as Wilbur Boat, Congress has indeed not enacted a federal marine insurance act. That does not mean that Congress lacks the power to do so. It means that in the exercise of its legislative powers, it has refrained from doing so. Now, Mr. Morales here invites this honorable court not only to improperly enact a federal marine insurance act via judicial fiat, but he does so based on the legislative choice of a foreign power. In this case, the United Kingdom. As Judge Celia pointed out before, there is actually a difference between a general maritime law and statutory law. General maritime law is a body of law that has not been enacted in statute. It comprises legal concepts and customs developed since the early days of marine commerce. These concepts have been developed by federal courts since the dawn of the republic. Here's my question, I guess, for me. It's a jurisprudential question, which is, I had thought one of the features of common law is that it can change. Yes, your honor. And in this case that. So here we have a long-standing doctrine that has its roots in an earlier age. And the argument to us is it doesn't make sense anymore. And the leading jurisdiction that most handles this has recognized it doesn't make sense. So why would it make sense to continue to construe the common law the way it was developed a century ago in a very different world? But what's the answer to that? Are we just stuck with it? We can't change it or. Your federal courts have can actually further develop general maritime law. And this circuit actually did so back in 2015 in the case of Kaplan, where this circuit adopted and joined its sister circuits. But in Kaplan and none of those other circuits were they apprised of or faced with an argument about how mistaken it would be to do that, given the insights that England, which developed this common law rule to begin with, to come up with. So what is the argument as to why in that situation we should just put blinders on and not pay attention to it in developing the common law? It will actually be an argument of separate separation of powers, Your Honor. The the the appellant, Mr. Morales, is actually asking this court to a reject a case that was decided just five years ago in order to enact a a quasi federal marine insurance act based on a conscious and deliberate legislative choices made by the English parliament. As Mr. Castaner said, the British Marine Insurance Act of 1906 has been a guide for federal courts for a long time. But as Judge Celia noted, the British Marine Insurance Act of 1906 is a general maritime law as it existed at the time based on the British experience. Now, Mr. Why isn't that what the 2012 and 2015 acts are? They're just updated a century later. Based on that experience, here's what it is now. Why wouldn't we just read it that way? I guess I just not understanding what the what maybe there's a reason not to do it. But I guess the idea that just because it's in a statute, the common law has to stay as it was when no one considered the arguments that are being pressed for developing in a different manner. I'm not quite understanding what that argument is. Well, Your Honor, the point would be that Mr. Morales is asking the court to engage in a proper exercise of its power because it is asking this court to legislate and develop a common law rule. And the whole thrust of what common law development is, is that it can change. We can't reconstruct a statute and make a new statute. But the argument here is we're just developing common law. If the common law rule is out of date, I thought that was the whole point of common law is that can be updated to have to have a high threshold for it. It might be unwise in a given circumstance, but jurisprudentially or it doesn't seem outside the judicial role to develop a new common law rule. That is true, Your Honor. But stare decisis exists for a reason. And the force of precedent exists for a reason. And this circuit actually adopted the rule of utmost good faith and declared an entrenched maritime precedent just back in 2015. But again, the court, as Judge Barron has pointed out, was not apprised of the changes in progress in English law. It was not, Your Honor. And none of the other circuits that we relied on in Kaplan had been apprised of it either, as far as I can tell. You're correct, Your Honor. But again, what doesn't this mean? So is there let me put it another way. Is there any substantive reason not to adopt this new common law rule? Or is the only reason we can't do it because we haven't done it before? Well, the Supreme Court actually has counseled following decisions based on a British court decisions. There is no case, particularly neither Kalmar nor Standard Oil, that has mandated federal courts to blindly adopt an act of Parliament in their development of general maritime law. To the extent that the Marine Insurance Act of 1906 is just a compilation of general maritime law, following British marine insurance laws in the 1950s was perfectly okay. But construing those decisions as a mandate to follow recent acts of Parliament, as invoked by Mr. Morales, we believe is highly improper and would be a violation of the separation of powers doctrine. Counsel, I'm curious about two things. Are there any other cases percolating up in the other circuits where the proposed new common law rule has been presented, number one? Number two, I'm also wondering whether there has been anything in the way of hearings before whatever the relevant congressional committee might be. Well, Your Honor, not that I'm aware of. I'm sure that Mr. Castaner would have included any of those decisions in his brief if they existed. And I'm not sure if I understood you correctly, but in terms of congressional committee, nobody has spoken about a congressional committee. I think Mr. Castaner was referring to the Law Commission, which is a commission on the English Parliament. No, I understand that. I was just wondering whether here in the United States there has been any legislative proposal under consideration. Not that we are aware of, Your Honor. And a lot of commentators have suggested that Congress enact a federal marine insurance act and that proposition has never been undertaken by Congress. Now, the district court correctly held that Mr. Morales five minutes remaining breaches duty of Uberima Fidei. At no point in time in his argument or in his brief, Mr. Morales claims to have fulfilled his duty of utmost good faith or Uberima Fidei. To the contrary, Mr. Morales candidly admits that the district court reached the correct decision based on the current state of the law. In short, Mr. Morales recognizes that the only way to reverse the judgment of the district court is by this honorable court accepting his invitation to disregard stare decisis by overruling its own president, set up in Catlin in 2015 and applying foreign statutes. Rather than arguing that he did comply with Uberima Fidei, Mr. Morales asserts that QBE has no grounds to claim a breach of that duty among their reasons. Let me ask you this question. Suppose Catlin was decided just as it was and the argument that's being made to us about following English or being informed by English law is just as it is now, except for one change. Instead of the change in the English rule having been affected by a parliamentary statute, it came about because of a court decision in England. So an English court just says, actually, you know what, we're changing the common law rule. If that had not been raised in Catlin and we were now presented with that question, there would not be a stare decisis problem, would there? It will still present a stare decisis problem because no English court decision is binding upon this honorable court. They are persuasive. They are to be informed. They help this honorable court to get informed, but they are not binding. So yes, the answer to the question is yes, it would have been important for this court to know about other English court decisions that might have abrogated the doctrine of utmost good faith, but it is fundamentally different for this court to do so based on an act of parliament. Now, Mr. Morales claims... Can I ask one last question about that, most good faith? What is the good argument for why the English approach is wrong? I'm sorry, your honor, the good argument for why the English approach is wrong? You've made a stare decisis argument. You've made a separation of powers argument, but is there a substantive reason not to follow the English approach? In other words, suppose there was no stare decisis problem and suppose there was no separation of powers problem. Is there something preferable about the utmost good faith rule relative to the rule England has now adopted for all of its maritime contracts? Well, your honor, I don't think there would be a way for this court to do that because it would be violating separation of powers. It would mean that this court would have to get into the wisdom... I'm asking you if there is any argument as to why the rule that you say we're bound to stick with is preferable to the one that England now has. Yes, it is. It is a time proven argument. It has served the marine insurance industry well. Contrary to what Mr. Castaner says that, of course, the word has gotten smaller due to communication advances, but still the marine insurance at the most basic stage works from insurers and underwriters issuing policies for vessels that they have never seen, and that is the purpose of the doctrine of utmost good faith. This case is a perfect example of that. Isn't it, counsel? Here at the insurer's request, this policy gets issued in 36 minutes without the insurer ever seeing the boat or taking the various representations in the affidavits, because it can rely on traditional marine insurance doctrines like Uberima Fidesz. You're completely correct, Your Honor. The insurance industry still works in that way, and in this particular case, the policy was issued just in minutes based on the representations made by Mr. Morales. In that sense, Uberima Fidesz has worked well for the marine industry and has worked well for commerce in general, because it allows underwriters to place risks without having actually seen the object of insurance. Now, I would like to point out quickly the problem with the opinion relied upon by Mr. Morales in order to claim that Uberima Fidesz or utmost good faith requires actual reliance, and the case is St. Paul Foreign Marine versus AVE. AVE has several problems. It is based on opinions unrelated to marine insurance, for example, based on policies governed by ERISA and automobile insurance policies, and most importantly, the AVE court refers to Uberima Fidesz as a mere defense of the insurer rather than as a duty of the insured. Now, Uberima Fidesz requires only materiality, and that is the law in this circuit as it stands now. Your Honor, I see my time is up. May I briefly conclude? Yeah, just take a minute. Thank you very much, Your Honor. As Mr. Morales stated in his reply brief, it may be true that QBE did not actually grasp the scope of his invitation to this honorable court. It was not an invitation concerning comedy. It was actually an invitation to this honorable court to legislate by adopting an act of parliament as the law in this jurisdiction via judicial fiat. Therefore, Mr. Morales's argument is even more upsetting than one of mere comedy. It is an argument outrageously based in the breach of the doctrine of separation of powers. The United States Supreme Court has stated that the knowledge of the insurer... I think we've heard this point of the argument. Thank you very much. Thank you very much. I stand by my brief on the remaining arguments. At this time, if Attorney Sosa would please mute his audio and video, and Attorney Castanier has a two-minute rebuttal. For the record, I'm Roberto Castanier for the Avalanche. I would first like to address Brother Counsel's comment about the reliance requirement on the doctrine of Roberto Maifide. He cited only the Eighth Circuit's opinion in the Abbey case. However, he failed to address that several other circuits have adopted the same position, not because they invented the wheel, but because it was adopted from England in that way, and it was included in the Marine Insurance Act of 1906 from England in that same way. And as Professor Schollenbaum, perhaps the most cited admiralty scholar in the nation, stated in his treatise, virtually all American admiralty cases require inducement. So that's not a doctrine that was born in the Eighth Circuit. It has been applied since the creation of the United States judiciary when it was adopted from England, and it continues to be the case. On the other hand, we have to address the allegation that the policy was based on the application and information submitted by the policy in this particular case. If the court goes to finding of fact number 14, the district court found that the policy was issued, the underwriting undertook the risk, not based on the application that resulted in the issuance of the policy in this case, but on the information on record for another policy that related to another boat, and that was not by testimony, proven by evidence in writing by the underwriter herself. And after receiving the application by Morales for this boat, she, like Judge Celia mentioned, issued a policy in 36 minutes based on the information provided for another boat. So there was absolutely no reliance on the application which related to the policy at issue here today. So that is a proven fact that should be dispositive as to the doctrine of Uberamay Fidei, because there's no question that she did not rely on the application. Your argument is that we have not held one way or the other with respect to whether reliance is required under the doctrine? Yes, Your Honor. There is absolutely no mention on the San Juan towing case that relying is or is not a requirement of the doctrine. However, the judgment of the district court was affirmed without reservation, and Judge Rezosa did discuss that the underwriter in that case relied on the information provided by the insured. Thank you. Thank you. I respect your case. Thank you very much. At this time, Attorneys Castaneda and Sosa may disconnect from the meeting.